**United States District Court**
For the Northern District of California

1
2
3
4
5
6          IN THE UNITED STATES DISTRICT COURT

7          FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9   SHARLANDS TERRACE, LLC,                      No. C-11-2503-EDL

10                  Plaintiff,                   **ORDER GRANTING MOTION TO
                                                 REMAND**
11        v.

12  1930 WRIGHT STREET, LLC, et al.

13                  Defendants.

14

15  **I.      Introduction**

16          On March 25, 2011, Petitioner Sharlands Terrace LLC filed a petition to confirm an

17  arbitration award in San Francisco Superior Court.  On May 23, 2011, Respondents Windgate

18  Apartments LP, M&G LLC, Barry Lewis and Mary Sparks ("Removing Respondents") removed

19  the action to this Court on the basis that the grounds for confirmation "depend on the Court's

20  resolution of a substantial question of federal law, namely, whether the arbitrators exceeded their

21  powers under 9 U.S.C. § 10(a)(4) by manifestly disregarding the Fair Housing Act, 42 U.S.C. §

22  3601, *et seq*. in rendering their award."  Dkt. #1.  Respondents 1329 Wright Street LLC, 3859

23  Annandale Lane LLC, 5311 College Oak Drive LLC, John Artal, Jim Brittian, Sandee Brittain,

24  Christopher Martin Trust, Thomas Finnegan, Barbara Finnegan, Richard B. Hutchins, Jon E.

25  Krabbenschmidt, Barabara F. Novogradac, Michael J. Novogradac, O'Brien Family Trust,

26  Sharlands Terrace Apartments I, LLC, Sharlands Terrace Apartments II, LLC, Robert P. Spalholtz,

27  Robert S. Thesman, Robert B. Tracy, and the Stephen B. Tracy & Victoria L. Johnson Revocable

28  Trust ("Joining Respondents") joined in the removal.  Dkt. #3.   The Joining Respondents and

Responding Respondents are collectively referred to as "Respondents" herein.

**United States District Court**
For the Northern District of California

1    On May 31, 2011, the Joining Respondents filed a Petition to Vacate and/or Modify

2  Arbitration Award.  Dkt. #8.  The Removing Respondents filed a joinder to the Petition to Vacate

3  and/or Modify, and filed their own Petition to Vacate a Portion and Confirm a Portion of

4  Arbitration Award and Motion to Vacate Arbitration Award.  Dkt. # 10, 12, 13.  Both Petitions to

5  Vacate argue that the arbitrators manifestly disregarded applicable law by: (1) failing to award

6  attorneys fees under the FHA, (2) failing to properly offset Respondents' contract and FHA

7  damages prior to calculating interest on Petitioner' contract claim, and (3) awarding a "penalty"

8  12% interest rate on Petitioner's damages.

9    On June 21, Petitioner filed a Motion to Remand, arguing that the Petition to Confirm is the

10  only document to be considered for purposes of removal and remand and it did not raise any federal

11  issue to supply this Court with jurisdiction.  Alternatively, Petitioner contends that Respondents'

12  argument that the arbitrators manifestly disregarded applicable federal law in refusing to award

13  FHA fees is patently without merit.  The Court heard argument on the Motion to Remand on

14  August 9, 2011, and delayed argument on the Petitions to Vacate until resolution of the remand

15  issue.  For the following reasons, the Motion to Remand is hereby GRANTED and therefore the

16  Court does not reach the issue of whether to vacate the arbitration award.[1]

17  **II.    Background**

18    This case originally arose out of the sale of an apartment complex in Reno, Nevada (the

19  "Property"). On November 4, 2003, Sharlands Terrace entered into a purchase agreement with

20  Pacific Regional Equities, Inc. whereby Pacific Regional agreed to purchase the Property for a total

21  purchase price of $25,880,000.  Prior to the close of escrow, Pacific Regional assigned its rights

22  under the agreement to a group of entities, which were the buyers of the Property (the "Buyers").[2]

23

24    [1]  All current parties to the Petition to Confirm the award have consented to this Court's jurisdiction.  Additionally, certain cross-defendants in the arbitration not named in the state court petition or the removal papers (Michael Blatt and Blatt Development of Nevada LLC; collectively "the

25  Blatts") were named in the later-filed Petition to Vacate filed by the Removing Respondents (but not the petition filed by the Joining Respondents). See Dkt. No. 11, 13 (adding the Blatts to caption without

26  explanation). The Blatts specially appeared to object to being named in the Petition to Vacate, and have also consented to this Court's jurisdiction.

27

28    [2]  The Buyers included 1930 Wright Street LLC, 5311 College Oak Drive LLC, 3859 Annadale Lane LLC, Windgate Apartments, LP, Sharlands Terrace I, LLC, and Sharlands Terrace II, LLC.

**United States District Court**
**For the Northern District of California**

1  As part of the purchase agreement, Sharlands Terrace agreed to carry-back a promissory note for

2  $1,880,000.  The note was executed, and secured by certain pledged collateral, by various

3  individuals and trusts that were members, shareholders, or otherwise associated with the Buyers.[3]

4  The Buyers and these individuals and trusts are the Respondents in this action.  The Note had a 6%

5  interest rate, required no payment until maturity six months after escrow, and was due in full with

6  interest on or before July 7, 2004.  The Note provided that the rate would increase to 12%

7  compounded monthly if it was not timely paid "for any reason."  Flynn Decl. Ex. B, C.

8  Respondents have never disputed the amount of the Note, but have not paid on the Note to this day

9  due to a claim of offset.

10       On June 4, 2004, the Department of Justice ("DOJ") instituted an action against Sharlands

11  Terrace, Blatt Development of Nevada, Inc. (the developer of the complex), Michael Blatt, the

12  architect, and the engineer to remediate various aspects of the Property that failed to comply with

13  the Fair Housing Act ("FHA").  The Buyers were also named in the DOJ Action.  The defendants in

14  the DOJ Action (except the Buyers) paid over $1 million to remediate the construction defects.

15  When the Note came due, Respondents refused to remit payment to Petitioner because they

16  believed that the damages they would incur, including lost rental income resulting from the

17  remediation and attorneys' fees in the DOJ Action, would offset the amount of the Note.

18       In the same case, Respondents filed a cross-claim against Petitioner and the Blatts for fraud

19  and breach of contract, but the dispute was dismissed and sent to arbitration pursuant to the

20  Purchase Agreement.  In the arbitration, Petitioner brought a cause of action for breach of contract

21  to recover the principal and interest due under the promissory note.  A three-arbitrator panel was

22  appointed and arbitration proceeded in San Francisco.  Respondents filed a cross-arbitration

23  demand against Sharlands Terrace, Blatt Development of Nevada, Inc., Michael Blatt, Raymond

24  Blatt, and Michelle Blatt.  In their sixth amended cross-demand filed in June 2008, Respondents

25

26  [3] The individuals and trusts included Thomas J. Finnegan; Barbara Finnegan; Pacific Regional Group, Inc.; Philip Johnson and Victoria L. Johnson Revocable Trust; O'Brien Family Trust; M&G

27  LLC; Barry Lewis; Mary Sparks; John Artal; Christopher Martin Trust Dated August 25, 2000; Robert P. Spalholtz; Jon E. Krabbenschmidt; Michael J. Novogradac; Barbara F. Novogradac; Richard B. Hutchins; Stephen B. Tracy; Robert B. Tracy; Robert S. Thesman; Jim Brittain; and Sandee Brittain.

28

**United States District Court**
For the Northern District of California

1   asserted 14 claims arising from the construction defects, including claims for fraud, breach of

2   contract, and violation of the FHA, and sought to recover more than $5.4 million for alleged

3   diminution in value to the Property as a result of the FHA violations, lost profits, attorneys' fees

4   incurred in the DOJ Action, and other damages.

5        A bifurcated arbitration generated two interim awards, and a final award was entered on

6   March 17, 2011.  Phase I of the arbitration related to Petitioner's liability for the breach of contract

7   and fraud claims, and the Phase I interim award found that Petitioner breached the contract and that

8   there were FHA violations.  Flynn Decl. Ex. U.  Phase II of the arbitration related to Respondents'

9   damages claims under the FHA and contract claims, and Petitioner's claim for breach of the Note.

10  The panel issued a Phase II interim award finding that Respondents were "aggrieved persons"

11  under the FHA who had suffered approximately $946,000 in damages (reduced by $300,000 due to

12  a separate settlement), and that Petitioner was owed $1,880,000 on the Note and $2,295,358 in 12%

13  interest.  Flynn Decl. Ex. V.  Respondents moved for reconsideration of the interest calculation and

14  failure to offset, and pursuant to direction from the arbitrators both parties submitted briefs on the

15  issue of who was the prevailing party for purposes of attorneys fees.  Flynn Decl. Ex. W, X, Y, Z,

16  AA.  Respondents' request for reconsideration was denied, and the panel stated that it: "has

17  reviewed the parties' submissions on the [prevailing party] issue, has deliberated, and after due

18  consideration, orders that under the circumstances of this arbitration no party is determined to be a

19  'prevailing party' for the purpose of recovering its or their attorneys' fees and costs incurred in

20  connection with this arbitration.  The parties shall each bear their own attorneys' fees and costs

21  regarding this arbitration."  Petitioner's Opp. to Motion to Vacate, Ex. M at 2 (3/1/11 Order

22  Denying Motion to Modify and Regarding Determination of Prevailing Party).

23       In the panel's Final Award, Petitioner was awarded $4,102,758 on its breach of contract

24  claim against Respondents (including interest accruing at 12% compounded monthly), and

25  Respondents were separately awarded $646,324.83 on their (1) breach of contract claim against

26  Sharlands, and (2) claim for violation of the FHA against Sharlands Terrace, Blatt Development of

27  Nevada, Inc., and Michael Blatt (accruing interest at the legal rate of 10%).  The final award did not

28  offset these separate awards, did not award Respondents costs or fees on their FHA claim, and

4

1    expressly found that neither side was a "prevailing party."  Flynn Decl. Ex. BB.

2         On March 28, 2011, Petitioner filed suit in San Francisco Superior Court to "confirm . . . an

3    award in an arbitration conducted according to an agreement between the parties that is subject to

4    the [California] Code of Civil Procedure section 1285 *et seq.*"  Dkt. # 1, Ex. A ¶ 2.  Petitioners

5    sought to confirm the arbitration award in their favor.  Id. ¶ 8.  On May 23, 2011, Respondents

6    removed the petition to federal court on the basis that this Court has jurisdiction under 28 U.S.C. §

7    1441(b) based on the existence of a federal question because "the arbitrators exceeded their powers

8    under 9 U.S.C. § 10(a)(4) by manifestly disregarding the Fair Housing Act, 42 U.S.C. § 3601, et

9    seq., in rendering their award."

10        Thereafter, the Joining Respondents filed a Petition to Vacate and/or Modify Arbitration

11   Award, claiming that the arbitrators "manifestly disregarded the FHA and federal law and

12   committed material mistakes in determining the Final Award amount by refusing to award

13   attorney's fees to Respondents (the prevailing parties) on their FHA claim as mandated by the FHA

14   and federal law."  Dkt. #8 ¶ 4.  The Petition to Vacate and/or Modify contends that it "requires the

15   Court to determine whether the arbitrators exceeded their powers and manifestly disregarded

16   federal law concerning the Fair Housing Act."  Id. ¶ 7.  The Petition to Vacate also challenges the

17   panel's refusal to offset the awards prior to making an interest calculation, and awarding interest at

18   a "penalty" rate of 12%.  Id. ¶ 5-6.  The Removing Respondents filed a joinder to the Petition to

19   Vacate and/or Modify, and filed their own Petition to Vacate a Portion and Confirm a Portion of

20   Arbitration Award, claiming that the panel exceeded its authority under the FAA by manifestly

21   disregarding the FHA by failing to award attorneys fees to them as prevailing parties under §

22   3613(c)(2), and improperly calculating damages award under the FHA in violation of §

23   3613(a)(1)(A).  Dkt. # 10-12.  This Petition to Vacate also makes almost identical arguments

24   regarding offset and interest.  On June 21, Petitioner filed a Motion to Remand based on lack of

25   federal question jurisdiction.  Dkt. # 24.

26

27   **III.    Motion to Remand**

28        The motion to remand must be considered first, because the Court must determine whether

**United States District Court**
For the Northern District of California

5

1 it has subject matter jurisdiction before reaching the merits of the petitions to vacate.  <u>See</u> 28 U.S.C.

2 § 1447(c); <u>Toumajian v. Frailey</u>, 135 F.3d 648, 655 (9th Cir. 1998).

3       **A.**     **Legal Standard**

4       "[A]ny civil action brought in a State court of which the district courts of the

5 United States have original jurisdiction, may be removed by the defendant or the defendants, to

6 the district court of the United States for the district and division embracing the place where such

7 action is pending." 28 U. S. C. § 1441(a).  District courts have original jurisdiction over "federal

8 question" cases, or those cases "arising under the Constitution, laws, or treaties of the United

9 States." 28 U.S.C. § 1331.  District courts must remand actions where subject matter jurisdiction is

10 lacking. 28 U.S.C. § 1447(c).  The burden of establishing grounds for federal jurisdiction rests on

11 the removing party.  <u>Emrich v. Touche Ross & Co.</u>, 846 F.2d 1190, 1195 (9th Cir. 1988).

12       In general, under the "well-pleaded complaint rule," a suit arises under federal law

13 only when the plaintiff's statement of his own cause of action shows that it is based upon federal

14 law." <u>Vaden v. Discover Bank</u>, 129 S. Ct. 1262, 1272 (2009) (internal quotation marks and

15 citation omitted).  "Federal law cannot be predicated on an actual or anticipated defense . . . .

16 Nor can federal question jurisdiction rest upon an actual or anticipated counterclaim." <u>Id</u>.

17 (citation omitted).  "[C]ounterclaims, even if they rely exclusively on federal substantive law, do

18 not qualify a case for federal court cognizance." <u>Id</u>. at 1273.

19       The Federal Arbitration Act ("FAA") does not itself confer federal subject matter

20 jurisdiction; rather, there must be an independent jurisdictional basis.  <u>Carter v. Health Net of Cal.,

21 Inc.</u>, 374 F.3d 830, 833 (9th Cir. 2004).  Additionally, a petition to vacate or confirm an arbitration

22 award does not "arise under" federal law merely because "the underlying arbitration involves a

23 federal question." <u>Luong v. Circuit City Stores, Inc.</u>, 368 F.3d 1109, 1111 (9th Cir. 2004).

24 However, a federal court has subject matter jurisdiction over a petition to vacate an arbitration

25 award where the basis for vacating an arbitration award is that the arbitrator manifestly disregarded

26 federal law.  <u>Carter v. Health Net of California, Inc.</u>, 374 F.3d 830, 836 (9th Cir. 2004); <u>Luong v.

27 Circuit City Stores, Inc.</u>, 368 F.3d 1109, 1112 (9th Cir. 2004).  An exception to this rule exists

28 where the allegation that the arbitrator manifestly disregarded federal law is "patently without

United States District Court
For the Northern District of California

6

1  merit." See, e.g., Carter, 374 F.3d at 836-37.

2         **B.**      **Analysis**

3         At its most basic, the parties' dispute over remand boils down to an apparent tension

4  between the "well pleaded complaint rule" and the "manifest disregard" rule.  Petitioner argues that

5  its original petition, filed in state court and removed to this Court, is the *only* document to be

6  considered for purposes of removal and remand under the well-pleaded complaint rule.  There is no

7  dispute that the original petition to confirm the award does not implicate federal law or raise a

8  substantial federal question.  Therefore, if the "well-pleaded complaint rule" governs without

9  exception, the case should be remanded without further consideration.  Respondents counter,

10  however, that under Carter v. Health Net of California, Inc., 374 F.3d 830, 836 (9th Cir. 2004),

11  their petitions to vacate the arbitration award – filed in this Court after removal –  must also be

12  considered and are sufficient to confer federal jurisdiction.

13         As discussed below, the Ninth Circuit was not squarely presented with the issue presently

14  before this Court in Carter, and had it been it likely would have refused to consider the later-filed

15  petition to vacate in determining the existence of federal jurisdiction.  Further, it did not have the

16  benefit of the Supreme Court's decision in Vaden, issued five years later.  However, in light of the

17  fact that the Carter court did consider both the petition to confirm and petition to vacate, albeit

18  without objection, the Court has considered both the petition to confirm *and* the petitions to vacate

19  in determining that it lacks jurisdiction.  In light of the very high standard for this Court's review of

20  arbitration decisions, the petitions to vacate the arbitrators' award based on a manifest disregard of

21  federal law patently lack merit and do not bestow subject matter jurisdiction on this Court.

22         **1.**      **Should the Court consider the later-filed petitions to vacate?**

23         Petitioner argues that the cross-petitions to vacate cannot be considered in determining

24  federal question jurisdiction under the Supreme Court's decision in Vaden v. Discover Bank, 129 S.

25  Ct. 1262, 1272, 1273(2009).  There, the plaintiff, Discover Bank, brought a state court breach of

26  contract suit against a credit card consumer, and the consumer counterclaimed that the credit card

27  contract terms violated Maryland's credit laws. Discover Bank removed and asked the district court

28  to compel arbitration, asserting federal jurisdiction on the basis that the state credit laws on which

United States District Court
For the Northern District of California

1   the counterclaims were based were preempted by federal law.  The Court relied on the well-pleaded

2   complaint rule to hold that the counterclaims implicating federal preemption were insufficient

3   where the complaint itself did not raise a federal question.  Id. at 1275-79.  The court reasoned that

4   "it would undermine the clarity and simplicity [of the well-pleaded complaint rule] if federal courts

5   were obligated to consider the contents not only of the complaint but also of responsive pleadings

6   in determining whether a case 'arises under' federal law."  Id. at 1272.  Petitioner argues that

7   similarly, here, its original petition to confirm the arbitration award did not implicate federal law

8   and any potential federal issues raised in Respondents' later-filed petitions to vacate should not be

9   considered.  Respondents counter that Vaden is not controlling because it involved a complaint

10  seeking to compel arbitration under section 4 of the FAA, not to confirm or vacate an award under

11  sections 9 or 10 of the FAA.  However, they do not adequately explain why a petition to compel

12  leads to a different result than a petition to confirm.  Vaden strongly supports Petitioner's argument

13  that generally the pleading that was removed is the only document to be considered regarding

14  jurisdiction.

15      Respondents also argue that Petitioner's underlying state court petition includes a statement

16  that "Respondents claimed they had a right to offset amounts due under the note as a result of

17  allegedly undisclosed FHA violations at the purchased property."  Notice of Removal Ex. A.

18  Respondents also point to the Phase 2 interim arbitration award, which states that "the Buyers

19  suffered damages as a result of Seller's, Developer's, and Mr. Blatt's admitted violations of the

20  FHA . . . and qualify as 'aggrieved' under the statute."  However, it is unclear how statements in the

21  "summary of dispute" section of the state court petition or the underlying Phase 2 award – even

22  though they mention the FHA – support federal jurisdiction where the petition to confirm is not

23  based on either of these statements.  See Luong v. Circuit City Stores, Inc., 368 F.3d 1109, 1111

24  (9th Cir. 2004).

25      Somewhat more persuasively, Respondents contend that their later-filed petitions to vacate

26  the arbitration award should be considered and are sufficient to confer federal jurisdiction because

27  they allege a "manifest disregard of federal law."  They rely on Luong and Carter, two Ninth

28  Circuit cases indicating that petitions to vacate alleging manifest disregard can serve as the basis for

federal question jurisdiction.  See Carter v. Health Net of California, Inc., 374 F.3d 830, 836 (9th Cir. 2004); Luong v. Circuit City Stores, Inc., 368 F.3d 1109, 1112 (9th Cir. 2004).  However, in Luong, the *only* petition at issue was a petition to vacate alleging manifest failure, unlike here where the first filed petition was a petition to confirm under California law and the petition to vacate alleging manifest disregard was filed *after* removal.

Carter does lend some support to Respondents' position, although it does not directly address the issue of whether and why the Court can consider a later-filed petition to vacate in its jurisdictional analysis, and its analysis appears to go against the Supreme Court's subsequent decision in Vaden and the well-pleaded complaint rule.  In Carter, the plaintiff filed a state court petition to confirm an arbitration award and the defendant removed.  The district court denied a motion to remand and the defendants then filed a petition to vacate, which was ultimately granted. On appeal, the Ninth Circuit first addressed the question of whether the district court properly exercised subject matter jurisdiction over the case.  Without discussing whether or why it should consider both the first petition to confirm and the later petition to vacate, and apparently without objection, the Ninth Circuit simply stated that "where the petitions to confirm and vacate the arbitration award are brought under a state arbitration statute," the parties must establish diversity or federal question jurisdiction."  374 F.3d at 833-34.  The Ninth Circuit first analyzed the petition to confirm and determined that it did not confer jurisdiction, and then turned to the petition to vacate.  Even though the petition to vacate did not use the phrase "manifest disregard," the Ninth Circuit examined it to determine if the substantive allegations essentially made this argument, which could have conferred federal jurisdiction.  Id. at 837.  Without discussing why it was considering the later-filed petition to vacate, the Ninth Circuit ultimately held that, even liberally construed, the allegations of the petition to vacate did not support jurisdiction on the basis of a manifest disregard of federal law because "[t]he governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable" and any such argument would have been patently without merit because Ninth Circuit law on the issue was unsettled.  Id. at 838-39.

**United States District Court**
For the Northern District of California

1    Respondents contend that the reason <u>Carter</u> considered both petitions is because a petition to

2 confirm asks the Court to perform a purely ministerial act, and that the only substantive issue is

3 whether grounds for vacatur, modification or correction exist so a cross-petition to vacate should be

4 considered in tandem.  However, <u>Carter</u> gave no such explanation for why it considered the petition

5 to vacate in addition to the motion to confirm, and following this reasoning there would have been

6 no reason for the Ninth Circuit to have considered the first-filed petition to confirm at all.

7    Petitioner contends that in <u>Carter</u> the Ninth Circuit did not explain its reason for considering

8 both petitions, and that "if it had considered the issue, it probably would have concluded, consistent

9 with its own precedent and that of the United States Supreme Court, that a cross-petition to vacate

10 an arbitration award filed after an action is removed cannot be considered for purposes of

11 determining federal jurisdiction."  Reply at 4.  In addition, arguably <u>Carter</u>'s entire discussion about

12 how the petition to vacate might be interpreted to assert a manifest failure claim is dicta ("even if

13 this argument *could* be construed as asserting manifest disregard of federal law, it is so patently

14 without merit that it cannot ground federal question jurisdiction . . .").  However, this Court will not

15 ignore the fact that <u>Carter</u> did consider both petitions in its jurisdictional analysis, and therefore the

16 Court proceeds to the question of whether the petitions to vacate confer federal jurisdiction over

17 this matter, in the event that it is appropriate to consider them.

18           **2.      Are the "Manifest Disregard" Allegations "Patently Meritless"?**

19    Even if the petitions to vacate are considered, they do not confer federal jurisdiction because

20 the allegations regarding manifest disregard of federal law are "patently meritless."  <u>See Hagans v.</u>

21 <u>Lavin</u>, 415 U.S. 528, 542-43 (1974) (no subject matter jurisdiction and dismissal appropriate if

22 federal question raised in complaint is patently meritless).[4]

23

24    [4] Respondents contend that this argument improperly seek resolution of the merits of the
petitions to vacate prior to a decision on subject matter jurisdiction.  However, the two Ninth Circuit
25 decisions primarily addressed by both sides specifically considered the merits of "manifest disregard"
challenges to arbitration awards in the decisions considering whether federal jurisdiction was available
26 (and both ultimately found that the allegations of manifest disregard were without merit).  <u>See Carter</u>,
374 F.3d 838-38 (manifest failure allegation insufficient for federal jurisdiction because it was patently
27 without merit where law at issue unsettled within Ninth Circuit); <u>Luong</u>, 368 F.3d at 1112 (manifest
disregard allegations in petition to vacate sufficient for federal  jurisdiction, but without merit).
28 Therefore, some consideration of the merits of the manifest disregard allegations is appropriate in
deciding whether federal jurisdiction is available.

10

1        The Federal Arbitration Act (FAA) allows a district court to vacate an arbitration award

2    "where the arbitrators exceeded their powers."  9 U.S.C. §10(a)(4).  The Ninth Circuit has

3    explained that review of an arbitration award is "'both limited and highly deferential' " and the

4    arbitration award "may be vacated only if it is 'completely irrational' or 'constitutes manifest

5    disregard of the law.'" Comedy Club, Inc. v. Improv West Associates, 553 F.3d 1277, 1290 (9th

6    Cir. 2009) (quoting Poweragent Inc. v. Elec. Data Sys. Corp. 358 F.3d 1187, 1193 (9th Cir.2004);

7    see also, Kyocera Corp. v. Prudential-Bache Trade Services, Inc., 341 F.3d 987, 997(9th Cir. 2003)

8    ("We have held that arbitrators 'exceed their powers' in this regard not when they merely interpret

9    or apply the governing law incorrectly, but when the award is 'completely irrational,' or exhibits a

10   'manifest disregard of the law'.").  In order to establish that an arbitrator manifestly disregarded the

11   law, the party seeking to vacate the award must show that (1) "the arbitrators recognized the

12   applicable law", (2) the law is "well defined, explicit, and clearly applicable", and (3) the

13   arbitrators "ignored it." Collins v. D.R. Horton, Inc., 505 F.3d 874, 879-80 (9th Cir. 2007); see also

14   Luong, 368 F.3d at 1112 ("'manifest disregard of the law' has a well-defined meaning" that the

15   petitioner could not possibly meet where it was clear from the record that the arbitrator did not

16   ignore relevant law).  One court has interpreted this to mean that "[t]he error must have been

17   obvious and capable of being readily and instantly perceived by the average person qualified to

18   serve as an arbitrator." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 933

19   (2d Cir. 1986).

20       Respondents argue that the arbitrators manifestly disregarded the law by refusing to award

21   costs and fees under section 3613(c)(2) of the FHA.  They point out that the panel expressly held

22   them to be "aggrieved persons" with standing to sue under the FHA, found that Petitioner had

23   violated the FHA, and awarded over $600,000 in damages.  See Phase II Interim Award; Final

24   Award.  They argue that this means that they were the "prevailing party" on their FHA claim

25   pursuant to Texas State Teachers v. Garland, 489 U.S. 782, 789 (1989) ("plaintiffs may be

26   considered 'prevailing parties' for attorney's fees purposes  [in civil rights cases] if they succeed on

27   any significant issue in litigation which achieves some of the benefit the parties sought in bringing

28   the suit").  They reason that, because they were the prevailing plaintiffs, attorneys fees and costs

United States District Court
For the Northern District of California

11

**United States District Court**
For the Northern District of California

1   were required under the FHA, despite the "discretion" afforded by the statute's express language.

2   See 42 U.S.C. § 3616(c)(2) ("court, in its discretion, may allow the prevailing party, other than the

3   United States, a reasonable attorney's fee and costs").  They do concede, however, that courts may

4   deny fees to a prevailing plaintiff based on exceptional circumstances, so fees are not mandatory.

5   To prevail under this theory, Respondents would need to show both that the arbitrators manifestly

6   disregarded the law by not finding them prevailing parties, and also by not awarding them costs and

7   fees under the FHA.

8          Before making a "prevailing party" determination, the panel invited additional briefing on

9   the issue of "which if any party would be deemed the 'prevailing party' for the purpose of potential

10  recovery of attorneys fees and costs" and held that: " The Panel has reviewed the parties'

11  submissions on this issue, has deliberated, and after due consideration, orders that *under the*

12  *circumstances of this arbitration proceeding* no party is determined to the be prevailing party for

13  the purpose of recovering its or their attorneys' fees and costs." Pet.'s Opp. to Petition to Vacate,

14  Ex. M (3/1/11 Order Respecting Determination of Prevailing Party) at 2 (emphasis added); see also

15  Vignolo Decl. ¶ 7-10, Exs. D-G.  The panel reiterated this conclusion in its Final Award.  Petition

16  to Vacate Ex. 8 (Final Award) at 3.  Given that the panel received extensive briefing, considered the

17  issue, and made a reasoned determination that neither party was a prevailing party under the

18  unusual circumstances presented, which include the fact that the Respondents received no

19  additional damages for the FHA violation and the amount of the award to them was dwarfed by the

20  integrally related award against them for improper setoff for breach of contract), the Court cannot

21  find that the panel ignored well-defined, explicit and clearly applicable law in coming to this

22  conclusion.  Even the sole Supreme Court case relied on by Respondents recognizes that a

23  prevailing party determination is within the decision-maker's "discretion" based on a number of

24  factors.  Texas State Teachers, 489 U.S. at 789.

25         Respondents' contention that the panel ignored well-defined, explicit, and clearly applicable

26  federal law in electing not to award fees and costs under the FHA is also patently without merit.

27  Respondents contend that the fact that the panel was fully briefed on applicable FHA law supports

28  their position, because it shows that the panel was made aware of FHA law and ignored it.  See

1   DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 81892d Cir. 1997) (no manifest disregard of

2   ADEA mandatory attorneys fees provision where petitioner failed to inform arbitrators of

3   applicable legal standard).  Respondents also attempt to distinguish Luong, where the Ninth Circuit

4   rejected an argument that the arbitrator manifestly disregarded federal law by extending the holding

5   of a Supreme Court case because it was clear that the arbitrator did not "ignore" the decision and

6   instead "[v]irtually every line of the opinion and award discusses Toyota and how it plays out on

7   the facts of Luong's case."  368 F.3d at 1112.  Respondents argue that neither of the interim nor the

8   final arbitration awards in this case address the issue of awarding costs and fees to the prevailing

9   party under the FHA or provide a reason for denying costs and fees.  However, the award itself, as

10  well as the record presented by both sides, shows that the panel was made aware of the parties'

11  positions on the law governing attorneys' fees (including the FHA), considered them, and decided

12  that neither party was entitled to fees.  Respondents have cited no authority requiring the arbitrators

13  to elaborate on the reasoning behind their pointed reference to "under the circumstances."

14          Additionally, Petitioner argues that an award of costs and fees under the FHA is

15  "discretionary," so the decision not to award costs or fees could never be a manifest disregard of the

16  law.  See 42 U.S.C. § 3616(c)(2) ("court, in its discretion, may allow the prevailing party, other

17  than the United States, a reasonable attorney's fee and costs").  It is true that some courts have so

18  held, but the dominant view is that attorneys fees in civil rights cases are granted to prevailing

19  plaintiffs  absent special circumstances.  See, e.g., New Jersey Coalition v. City of Ashbury Park,

20  152 F.3d 219, 225 (3rd Cir. 1993) (though statute appears discretionary, "district court's discretion

21  not to grant attorney's fees and costs in civil rights cases is tightly cabined").  Respondents rely

22  heavily on DeGaetano v. Smith Barney, Inc., 983 F. Supp. 459 (S.D.N.Y. 1997), where a district

23  court found that an arbitrator had manifestly disregarded federal law by not awarding fees to a

24  prevailing plaintiff in a Title VII case because there was no showing of special circumstances that

25  would have made such an award unjust.  That court acknowledged that, while seemingly

26  discretionary, Title VII's fee provision "establishes a presumptive entitlement to an award of

27  attorney's fees for prevailing parties."  Id. at 462.  However, in DeGaetano, there was no dispute

28  that the plaintiff was the prevailing party, where she recovered on her claims and the defendant did

1   not.  Here, by contrast, Petitioner recovered significantly more than Respondents overall,

2   Respondents' recovery was for both their breach of contract and FHA claims (i.e., Respondents did

3   not recover any additional damages for their FHA claim), and the panel expressly held that neither

4   side was the prevailing party for purposes of collecting attorneys fees.  DeGaetano is

5   distinguishable on all of these points.  Further, unlike the Third Circuit, other courts have held that

6   fees to the prevailing party under the FHA are discretionary.  See LeBlanc-Sternberg v. Fletcher,

7   143 F.3d 748, 758 (2d Cir. 1998); Taylor v. Harbour Point Homeowners Ass'n, 2011 WL 1792766,

8   *1, 3 (W.D.N.Y. May 6, 2011).  Even cases finding that fees to prevailing parties in FHA cases are

9   "mandatory" have recognized that "special circumstances" could prohibit an award of fees.  See

10  DeGaetano, 983 F. Supp at 462.

11      Both sides acknowledge that there are no Ninth Circuit cases directly on point, and that the

12  arbitration panel was not bound by a choice of law provision that would require the application of

13  any one of these standards.  This lack of controlling authority means that there was no "well-

14  defined" or "explicit" law that the arbitrators could have manifestly disregarded in deciding not to

15  award fees.  See Luong, 268 F.3d at 1112.  For this additional reason, the "manifest failure"

16  argument is patently without merit and cannot confer federal jurisdiction even if the petitions to

17  vacate are considered.

18      Finally, Petitioner points out that it can be inferred that the panel determined that special

19  circumstances existed in this case.  See Barbier v. Shearson, Lehman, Hutton Inc., 948 F.2d 117,

20  121 (2d Cir. 1991) (no judicial interference where ground for arbitrator's decision can be inferred

21  from the facts).  Specifically, Petitioner contends that the panel might have considered that

22  Respondents did not vindicate one disabled person's rights and were really bringing private tort

23  claims, FHA recovery was not separated from recovery on breach of contract claims, Respondents

24  had already recovered their fees in another litigation that did directly address abatement of the FHA

25  violations, Respondents were awarded only a fraction of the amount of damages they sought, and

26  were awarded far less than the amount awarded to Petitioner on its claims.   The arbitration award

27  does not expressly discuss any special circumstances, but the panel was not required to explain the

28  basis of its decision not to award fees or to enumerate what special circumstances it considered.

United States District Court
For the Northern District of California

14

This Court has no authority to decide whether the panel "got it wrong."

For the foregoing reasons. Petitioner's Motion to Remand is GRANTED.[5]

**IT IS SO ORDERED.**

Dated: August 11, 2011

*Elizabeth D. Laporte*

ELIZABETH D. LAPORTE
United States Magistrate Judge

---

[5]   As a last resort, the Removing Respondents argue that even if the Petition to Confirm should be remanded, the Court should maintain jurisdiction over their Petition to Vacate "as against the Blatts" because the Blatts did not file a Petition to Confirm and have not moved to remand, See Dkt. #35 at 7. The Court rejects this attempt to treat the petitions to vacate as a separate, severable action from the petition to confirm. Respondents have cited no authority for this procedure, and the Court is unaware of any.

**United States District Court**
For the Northern District of California